Morning, Your Honors. I'm Jordan McKnight. I'm counsel for Appellant, O.P. and Alleged Elizabeth P. The district court in this case found that there were several serious violations of IDEA, the Individuals with Disabilities Education Act. They found that the district, Weslaco, committed a child fine violation for over a year, and what that means is that the school district was on notice that they needed to evaluate the student. The parent had brought in a private evaluation that said the student has autism, the student has multiple other disabilities, and we recommend that you look at this for special education eligibility, and the district took that and instead chose, behind closed doors, without involving the parent, not to evaluate the student. And so the district court agreed with us that that was a child fine violation, and they waited over a year to test the student, and in fact only tested the student after we sued them for not testing the student. The district court also found that they committed an act of improper predetermination. They made a decision about the student and his eligibility behind closed doors in 2019 without ever evaluating the child, and without involving the parent at all, which is one of the most important facets of the IDEA statute, and the school district decided on its own, with no evaluation, that this student was not eligible for special education in 2019, and obviously maintained that until the parent came back a year later and said, no, he needs to be eligible, and then, of course, we filed our suit saying they have denied him an evaluation. The school district then evaluated, and during the course of the litigation, and what the absolutely agree with the district court, that they did commit those serious violations of child fine and predetermination, is that they left us without a remedy, because they said, well, the school district evaluated him, and they found that he's ineligible, and there's really two reasons that's wrong. One, and we're going to address that further here in a second, but the school district, or the district court, gave that evaluation far too much deference. That's the biggest thing they did wrong, and then also, they were wrong that their hands were tied about those other two violations, even if that were the case. Now, as far as the eligibility question, the district court said, well, Mr. McKnight, you wasted a quarter of your brief arguing that he should be eligible and that we should consider what your expert, Dr. Rodriguez-Escobar, said, that she said he's autistic, and that she testified that he should be getting special education, because we have to defer to what the school district did. But what we believe is really important, here is the Teague ISD case, Teague ISD v. Todd-Smith, that says, you only have to defer to the school districts and their evaluation to the extent they followed IDEA. Well, here the district court has found they did not follow IDEA. They made a decision about this kid before they evaluated, a year before they even started evaluating. They committed a child fine violation a year before, and then they committed all sorts of violations inside of the evaluation, which we'll talk about more later. So, it was absolutely incorrect for the district court to say, well, you missed the forest for the trees, we have to defer to the school district, we're not educators. You only do that when they followed IDEA, when they followed that appropriate procedure. Here they absolutely did not. And there were some other citations, obviously the SF v. McKinney case out of the Eastern District of Texas said that they're not entitled to a presumption in those evaluations, that the court is capable of assessing those individually, and is capable of assessing what a school personnel did versus what the expert did individually. And here the district court just says, I have to defer to what that school expert did. The district court was supposed to look at that individually. And there are a lot of reasons why if they had done that analysis, the result would have been different. First, all the violations and how they conducted that evaluation. But additionally, our evaluator was significantly more experienced. In fact, our evaluator who had a doctorate degree in psychology was the one who trained the district's LSSP, which is a master's level degree, had years more experience and had been able to evaluate the student in person prior to COVID, whereas the school district kind of had to do a dilapidated evaluation during COVID and had to rely on personnel who had never met the student, who had only seen him over Zoom with his camera off. So if the school district had done what the, what SF v. McKinney had done and what is ultimately recommended by Christopher M. v. Corpus Christi had done and assessed the student, there's a very real reason to think that there would be a different result. And we're asking you to find that different result and or to remand back to the district court to examine that further, to say if you apply the right standard, if you assess this individually instead of defer to the school district because you shouldn't defer to the school district because they violated IDEA, then we've got a different result here. Now that we can actually look at this without giving deference, this child should be eligible. We need to find that this student has autism. We need to find that this student has a communication disorder, a specific learning disability, and we need to service him. We need to help him out. What year is he now? He's now, I believe, a sophomore in high school and he's absolutely still having trouble with his issues. The recent issue, he kind of had a panic attack in class because he'd done all the work, but he had to give a presentation and had to, he got a zero on it because he couldn't go in front of the class and talk about it. And he's not getting any kind of accommodations for that because we've done all these things that have prevented him from ever being eligible. And that's the problem. The school district, they denied an evaluation for over a year. They made their own decision that he was ineligible. They did a bad evaluation with all these flaws and it was completely hampered by COVID. But even beside that was flawed in and of itself. And then even though they were doing that evaluation during the course of litigation, which as I've cited in the IWB super hardened cases, is disfavored. It's disfavored to do those 11th hour evaluations where we filed a suit saying, hey, you guys haven't evaluated him. And now they come in and go, oh, well now we want to evaluate him. Yeah. That's a problem. And so the school district then gets to put its thumb on the scale and go, eh, no, we were right all along. We've been investigating our decision and we've determined we were right. He was ineligible. It's a serious problem. And so, you know, but the court gave deference to that evaluation without actually doing an actual analysis, without doing an actual consideration. They said, you wasted your brief arguing that we should consider Dr. Rodriguez-Escobar's testimony in her report because we've got to give that deference. And they don't have to give the difference here because they, the district court found that they didn't follow IDEA. So if you look at that Teague ISD case that says that they don't have to give that deference when they're not following IDEA, I think when you look, when you change that standard, you see that the analysis on this was incorrect. Now the other issue here is that, well, even, regardless of that, if it was just a child find violation, if it was just that failure to evaluate him for a year, and failure to make, or that violation, that predetermination, making that decision behind closed doors, this court can still give us a remedy for that. They can give us an equitable remedy. They have discretion to do that under 20 U.S.C. 1415. And as mentioned in the school, town of Burlington Supreme Court case, that equitable relief is available under IDEA. And in the PP versus Northwest ISD case from 2020 in the 5th Circuit, that broad discretion of equitable relief is available to the district court and to the administrative level to fashion relief here. So they absolutely could have given us equitable relief here of, what we want is, I mean, a couple things, but the easy one is give us a new private evaluation. Give us an IEE. That's what we've been asking for all along. Or go tell the school, do your evaluation over. COVID's over now. Go do it right. Go do it with personnel who are actually trained to do the evaluation. What prevents you all seeking an evaluation now? Well, we've asked for the independent educational evaluation, and they've denied that. So, and basically, they're entitled to deny us one, you know, if they're within the three years from the initial one. So basically, no, we still need a remedy from this court. We haven't been able to get that independent educational evaluation that we're seeking as equitable relief. So the, there were a number of problems, however, you know, with the district's evaluation. The biggest one was on the clinical assessment of pragmatics. The evaluation, the school's LSSP testified, I've never done that before. I didn't, I didn't know what I was doing. I didn't know how to score it. And we, the district court found she scored that wrong. We have to throw that test out. That's not a good test. But what the district court did wrong is they, they kind of said, well, we're weighing it. There were, there were definitely some problems, but it was unreliable. But those were idea violations. 34 CFR 300, 304, and then 20 USC 1414B lay out how you have to, you know, do these tests. They have to be technically sound. They have to be administered by knowledgeable personnel and administered in a valid manner. So it's not this, this reliability test. We get to treat these as separate idea violations when, when they do something wrong. And that's not how the district court treated it. They go, well, it was, there was some problems, but it's, it's just not bad enough, you know, for us to completely throw it out. And no, we need to look at those and say, those are idea violations. They, they denied this student a free appropriate public education. They kept him from being found eligible, which is huge. And so he's not, you know, we're not addressing the needs of the whole child. We're not addressing his social needs. We're not addressing his academic needs. The, I mean, some of these evaluations, besides the clinical assessment of pragmatics, they administered a test that had been in existence for a matter of months and never been peer reviewed called the brief observation of symptoms of autism. The problem with that one is that it was the parent who had to administer that to the child over Zoom. An idea requires that, you know, a trained and knowledgeable personnel administer that. Well, the parent doesn't have any training, but they're the one who's supposedly giving the test. Also on the BASC evaluation, it says its instructions say it has to be given by personnel who are familiar with the student. Well, the teachers they gave that evaluation to and gave that rating to had never met the student in person and had never seen him interact with other children because of COVID. They had seen basically a black screen with his name on it for two months. Well, I mean, COVID has caused a lot of problems. How does that change things here? I mean, there are a lot of problems, regardless of whether they're doing everything perfectly. They couldn't do it in a, you know, group of people, at least during periods when things had to be quarantined, et cetera, et cetera. And, you know, a lot of, most schools were virtual for quite some time and so on. Well, and yeah, I think things were difficult, but that doesn't kind of give them. And of course, a virtual school does change what your socialization is. Sure. That doesn't give them carte blanche to violate an idea, though, and to use a test that says you have to do it this way and to do it another way. Opens a little different door on what the tests are and how to do them. And it was, I'm hopeful and only time that we're going to have something that extreme. I don't recall something that extreme in my lifetime. And I'm not quite as young as I wish I were. And so, you know, the reality is it was a weird time. And how does that impact? Well, we certainly think that, for one, that speaks to why we should be granted our equitable relief, which is, hey, retest this kid or give us new private evaluations. Let's do this right now. Let's not have to go back and look at this terrible test and go, well, was it terrible enough because of COVID? I mean, no, it was terrible. They did it wrong. And let's do it right now. Let's go retest this child. Let's see if he's actually eligible. So, I mean, I think that speaks to that. But their violations were not solely COVID-based. I mean, they were using personnel who did not know how to do these tests. The We were dealing with missing eligibility by a matter of one point. And he's just making numerous arithmetic errors that can affect the results. These weren't valid results. And the sad fact is, I mean, he testified at hearing that he got picked to do that when him and his colleague were arguing they didn't want to do it because they knew it was going to go into litigation. So they flipped the coin to see who had to be the one to do it. This evaluation was done badly. And the district court, I mean, didn't give us relief on that. But even though they found it was done badly, and even though they found that there were multiple violations of IDEA, and that this child had been deprived an evaluation in the appropriate time, and that the school district had made up its mind before this process even started. Thank you, Your Honors. Thank you. You've saved time for rebuttal. We'll now hear from Bridget Robinson. Good morning, Your Honors, and may it please the Court. This case was brought by plaintiff under the Individuals with Disabilities Education Act. As such, this appeal is the third review of the school district's evaluation finding that OP was not eligible for special education services. Following a two-day evidentiary hearing, a state administrative hearing officer denied plaintiff's request for due process, finding that the school district did not fail to provide a free, appropriate public education. On appeal, the district court issued a 28-page order, and also found that the school district did not improperly evaluate OP's eligibility for special education services, or failed to provide a free, appropriate public education. Clare, is y'all at least willing to do another test, given the COVID testing and so forth, which was a little bit wacky, even if y'all were being as perfect as possible at the time?  This was the first time this specific student had been tested for special education eligibility. So first, we need to recall that despite the contention that these tests were flawed, which was an argument that was explored and specifically rejected by the special education hearing officer, who thoroughly reviewed all of the test instruments and tools, this was not the first evaluation. But the district court did find procedural violations. Your Honor, the district court did not extend the deference to the special education hearing officer that this court requires be extended to the hearing officers who hear the witnesses, observe their credibility, review the facts. But the district court did find procedural violations, correct? Yes, Your Honor. However— You're saying the district court was wrong in making those. Your Honor, I certainly do not think the district court extended the due weight and deference to the evidentiary hearing officer, the special education hearing officer, that evaluated the evidence at the two-day evidentiary proceeding. But nevertheless, the district court did reach the correct conclusion. Even the district court found, indulging all of the arguments by plaintiff's attorney regarding the flaws, which I do not believe are supported by the record on appeal and the evidence adduced during the due process hearing, that plaintiffs still could not carry their burden of proof. And on those points, the district court was correct. And as you are aware, this court may affirm on any ground, including those not reached by the district court. Regardless of whether you accept the district court's However, following this court's precedent, I believe it is clear that the special education hearing officer reached the correct conclusions regarding the evaluation instruments, the tools used, the qualifications of the individuals who conducted the tests, and ultimately the their expert's conclusions should be accepted, were rejected by the hearing officer for multiple reasons. One of the primary reasons that the hearing officer rejected plaintiff's contention that their expert's evaluative tools should be accepted without question was because their Instead, Dr. Rodriguez-Escobar merely accepted the input from the parent in this case. Dr. Rodriguez-Escobar never obtained information or input from OP's teachers. All the information she relied upon regarding OP's experiences at school came secondhand from plaintiff, who of course doesn't even attend school with her son. Dr. Rodriguez did not obtain a copy of any records. Dr. Rodriguez-Escobar did not assess OP over a series of meetings or over a period of time, did not gather information from his teachers, did not gather information about his environment, did not see OP in the classroom or at home, did not review school records, did not talk to other educational professionals who knew him, and did not administer a variety of assessments. Although Dr. Rodriguez-Escobar found OP met her diagnostic criteria for autism, the scores she interpreted were solely gleaned from a parent questionnaire and not from any a variety of assessment instruments and tools. The school district appropriately conducted a full individual and initial evaluation of OP. And remember that this was the second full individual and initial evaluation of OP. An initial one had been conducted in 2015 and there had already been an ARD committee meeting on March 12, 2015, attended by plaintiff herself to discuss the results of that full individual evaluation. At that time there was discussion about the fact that OP did not qualify for special education services because he did not have a disability which as a result of required specially designed instruction in order for him to obtain academic and non-academic benefits. That is why OP did not qualify in 2015, yet in the test that was conducted at the issue of this case, the as I mentioned, and the hearing officer found not only a variety of assessment instruments and tools, but valid instruments and tools that were correctly evaluated to determine that he did not qualify. The district not only used that variety of tools and instruments, they obtained input from his teachers, a licensed psychologist, a licensed specialist in school psychology, an outside evaluation, and parental input. The school district completed an appropriate FIE in all areas of requested assessment. As the hearing officer noted, the staff members who conducted the FIE were appropriately certified and credentialed to administer each test. As the hearing officer also noted, the very instruments that plaintiff attacks were not only valid, but were reliable in assessing OP's language and communication, his cognitive abilities and his academic abilities. In addition to the tests that plaintiff mentioned such as the BASC-2 and the BOSA test, the school district also used instruments including the ALS-2, the WJ-4, the KABC-2, and the KTEA-3. Clearly, there were multiple instruments that were used and found to be valid by the hearing officer, and that conclusion was correct. If the district court had extended the due weight and deference to the hearing officer's findings that she was required to extend, then there would not have been a determination that there was any flaw in the school district's testing or evaluation instruments. However, even assuming that the district court was correct, that the tests had some flaw or that they were not perfect, the district court reached the correct conclusion that plaintiff was not entitled to relief in this case. As you know, although a school's failure to comply with child find may constitute a procedural violation of the IDEA, liability under the IDEA cannot be based solely on a procedural error. Instead, liability predicated on a procedural violation of the IDEA can arise only if the procedural error, number one, impeded the child's right to a FAPE, two, significantly impeded the parent's opportunity to participate in the IEP process, or three, caused a deprivation of educational benefits. As this court has held many times, including in Adam J. v. Keller Independent School District, in E.R. v. Spring Branch Independent School District, and in other cases, procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity. There was no loss of an educational opportunity in this case. The district court did reach the correct conclusion in that regard as the hearing officer below had also concluded. The school district did not commit procedural violations of the IDEA. The child find duty is only triggered when the local education agency has reason to suspect a disability coupled with the reason to suspect special education services may be needed to address that disability. As this court held in D.G. v. Flower Bluff Independent School District, the IDEA does not penalize a school district for not timely evaluating students who do not need special education. There was simply no need for special education regarding this student, either when he was tested in 2015 or when he was tested following the parent finally signing the consent for testing in the 19-20-21 time frame. Instead, there was no reason to suspect that O.P. was a student with a disability or that he was in need of special education or related services. Indeed, even plaintiff's own correspondence to the school district indicated that O.P. did not need special education services. The reason that this issue came to a head again following the conclusion after the 2015 testing that O.P. was not a student who needed special education services is because on February 8, 2019, the plaintiff wrote a letter to the school district in which she mentioned the private testing that she had obtained based again solely on her own input. That letter, on which plaintiff heavily relies, is in the letter 9-01. If you look at her own letter and her own input in which she said, hey, I have this private evaluation I would like the school district to consider, she said in the letter, educationally, O.P., albeit using his actual name, educationally, O.P. is doing great. In that same letter, in a separate paragraph, in fact, in her concluding paragraph, she said, educationally, there are no struggles. Plaintiff herself admitted that O.P. was not a student in need of specially designed instruction and that was consistent with all of the results from the testing in 2015 as well as in 2021. Throughout the relevant time period involving this student, O.P.'s teachers never expressed any concerns related to his academic or non-academic progress. On the contrary, O.P.'s teachers and evaluators testified that there were no concerns regarding any of the following, O.P.'s self-help skills, his cutting skills, writing skills, anxiety, emotional difficulties, ability to adapt to new situations, interpersonal relationships, adaptive behavior, participation with peers in class, eye contact, academic ability, school attendance, ability to make new friends, ability to express... Do teachers try to get help if someone's having problems in classes? Absolutely they do, Your Honor. If they recognize that there is any indication at all that a student is in need or might possibly be in need, not only of special education services, but even of a 504 accommodation, those teachers and certified school district personnel, including diagnosticians, licensed specialists in school psychology, counselors, administrators, and others, all bring it to the attention of individuals so any student in need can obtain any type of accommodation or specially designed instruction that may be necessary for that student to benefit either academically or non-academically. All of the school district personnel are trained to observe the students and watch for anything that could be an indication of a need for, as I mentioned, not just special education, but Section 504 services or just perhaps counseling services if the need should arise. But in this case, there were no red flags or even yellow flags indicating that OP was in need of any sort of intervention for any reason. Do you have any other arguments you want to make? Your Honor, in this case, the hearing officer correctly determined that OP was not denied a FAPE and the district court affirmed even without extending the deference that is owed to the hearing officer's decision. The hearing officer was correct because succinctly stated OP is not entitled to relief under the IDEA as both the hearing officer and the district court found. I would like to just briefly mention that plaintiff's assertion that there was a predetermination that OP was not entitled to special education services is not supported by the record. In fact, that is belied by the record, not only based on the prior testing which found him ineligible in 2015, but based on the testing in this case. There was no predetermination of an outcome regarding OP and there was no failure to take into consideration the information from the parent or her evaluator. To the contrary, the school district looked at everything that the evaluator, the parent's private evaluator said and that the parent said in her own letter at page 901 where she admitted that there were no educational struggles in trying to determine whether there was an additional need for any services in this case and section 504 services were extended. However, there was not predetermination which only provided an opportunity for the parent to fully participate as members of the IEP team. The parent in this case had every opportunity to participate as a member of the team, did participate as a member of the team and her input was considered not only based on the fact that she was the only one who provided input to the specialist, but based on her own letter at page 901 where she noted that OP was doing great educationally. This court in a very similar case styled William V as next friend of WV versus Coppers Cove Independent School District vacated and remanded a district court's decision where the district court said that dyslexia was automatically a qualifying condition and this court said you have to evaluate both parts of the test to determine whether an individual is entitled to special education and determine whether there is a need for specially designed instruction. If there is not a need for specially designed instruction, then a student is not entitled to services under the IDEA or a FAPE even though he may be receiving them under section 504. The district court in this case did reach the correct conclusion and certainly the special education hearing officer reached the correct conclusion. For all those reasons as well as those in the brief, we respectfully request that this court affirm the decision of the district court. You had asked do teachers look out for issues and do they present those. In an ideal world yes, but in Texas during this time frame the Department of Education had found that statewide Texas was violating essentially the child fine provisions. They weren't training their people appropriately. They withheld $33 million from the state of Texas of education funds because we were not doing child fine right in Texas and here we have a specific example of where we did not do child fine right during that time frame. The appellees said they did not give the appropriate deference to the hearing officer. While they have to give them due weight, it is de novo. It's de novo review and we believe that the court's de novo review was appropriate. Now the appellees council also said that the district court indulged all our arguments. While all our arguments they indulged us on, they agreed with us. They agreed with us on statute of limitations. They agreed with us on predetermination and they agreed with us on the child fine issue. The only one however they did not indulge are any of our arguments about eligibility and the reason they did that is because they said well we just have to defer to the school's evaluation and we've gone over that with the Teague ISD. When there are idea violations, which there were outstanding idea evaluations when this occurred, they do not have to give that deference. So no the district court did not indulge all our arguments. The district court admittedly said we ignored a quarter of your brief because we have to defer to the school district in these circumstances and that's just not the case. Now so they, I mean they didn't even consider our issues about eligibility. There is evidence in the record and the testimony that shows he is eligible. Now appellees council brought up, they repeatedly brought the letter. I'd absolutely encourage you to go look at the letter. She does say this thing about education, but the point is and she said there were no yellow flags, no red flags showing he was having educational problems. He'd failed the STAR like four or five years in a row at that point. There were absolutely educational problems. So yes, that was very significant. He'd failed the MET. Where's the record on he failed it more than once? I know it's, I couldn't cite the record off the top of my head. I know it's in the briefing and I can go. I saw that he failed it once. I'm not remembering this. I know I have it in the briefing that he'd failed it for multiple years, but even if it was just the one that we're talking about. He failed the following year he went up two steps. Well the year when they were doing the child find, he had failed the year before that when it would be under consideration. So this time frame where we're talking about, where they're having to make the decision to evaluate, they're looking at a failed STAR score at that time. So there were absolutely educational problems that should have triggered that evaluation. But the major thing that should have triggered the evaluation was not just mom's letter, it was a private report from somebody with a doctorate of psychology saying this child had autism, this child has multiple disabilities and you need to work with getting this child special education eligibility. That's what triggered it. That's the main thing that triggered the child find duty. Absolutely. Now, let's see. There was a lot of argument about, well, our evaluations were good and Dr. Rodriguez's evaluation was bad. Well, that's never been considered in this, that wasn't even considered by the district court because, again, they said we can't think about those questions because we have to get a difference. But there's several arguments in Dr. Rodriguez's favor. She did review the school, or review school records that were provided by the parent. But also she was the only one who saw this child in person who actually had a chance to interact with the child. The school's LSSP never had a chance to interact with the child in person. The teachers who gave their input to the school's evaluation never had a chance to talk to this child in person. She did. She did her evaluation in 2019 when she could actually, she brought the child into the office, had the conversations with the child, did the autism testing for the child in person. And so absolutely, her record and the record that was put to the district court absolutely established eligibility. And this court should find that. But this court should definitely find that the district court inappropriately failed to even consider those arguments, that the district court said we have to defer to the school when they absolutely did not have to defer to the school. Fifth Circuit precedent says treat each case individually. Weigh a school official versus private evaluator equally and don't give difference when there are idea evaluations. And the district court found multiple idea evaluations. Okay. Thank you. We appreciate both sides' arguments. The case is now under submission and this panel is adjourning.